**No. 22-15288**

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

PRESTON LEE,

Plaintiff-Appellant

v.

L3HARRIS TECHNOLOGIES, INC.

Defendant-Appellee

---

On Appeal from the United States District Court
District of Hawaii Civil No. 1:20-00489 (LEK/KJM)
(Honorable Leslie E. Kobayashi)

---

**DEFENDANT-APPELLEE L3HARRIS TECHNOLOGIES, INC.'S
REDACTED ANSWERING BRIEF**

---

CADES SCHUTTE LLP

AMANDA M. JONES      8854
MALLORY T. MARTIN    10211
1000 Bishop Street, 12th Floor
Honolulu, Hawaii 96813
Telephone:  (808) 521-9200
Email:  ajones@cades.com
           mmartin@cades.com

Attorneys for Defendant-Appellee
L3HARRIS TECHNOLOGIES, INC.

1

## <u>TABLE OF CONTENTS</u>

**Page**

I.     STATEMENT OF ISSUES PRESENTED FOR REVIEW............................1

II.    CONCISE STATEMENT OF THE CASE ......................................................1

    A.    Lee's Employment at L3Harris and the Events Leading to His Termination .........................................................................................1

        1.    In March 2019, Lee disclosed that he received a 100 percent disability rating due to PTSD.........................................3

        2.    Lee had a profanity-laced outburst at Igne because of an instruction to wear pants while pressure washing. ...................3

        3.    Lee claimed to be unable to work for more than four months after receiving a written warning concerning his conduct toward Igne.................................................................5

        4.    L3Harris and Keaki investigated Lee's allegation that Igne stole gas.........................................................................6

        5.    L3Harris made the initial decision to terminate Lee's employment in January 2020.......................................................8

        6.    Lee made concerning statements during an independent psychological examination in February 2020............................9

        7.    L3Harris terminated Lee's employment in June 2020. ...........10

    B.    The Litigation in the District Court....................................................11

        1.    Lee's successful disability benefits application.......................13

        2.    The District Court granted L3Harris's summary judgment motion ......................................................................17

III.    STANDARD OF REVIEW.......................................................................18

IV.    SUMMARY OF ARGUMENT.................................................................19

V.    ARGUMENT...........................................................................................20

-i-

# TABLE OF CONTENTS
(continued)

**Page**

A.    Lee Did Not Challenge the Dismissal of His Claims Premised on Events Prior to His Termination, and Thus, the District Court's Dismissal of Those Claims Should Be Affirmed.................20

B.    The Dismissal of Lee's Disability Discrimination Claims Premised on the Termination of His Employment Should be Affirmed. ............................................................................22

    1.    This Court should affirm the dismissal of Lee's discrimination claims on the alternative ground that Lee failed to establish a prima facie case. ......................................23

        a.    Lee did not establish that he is a "qualified individual" and should have been estopped from arguing he was qualified based on the statements in his successful disability benefits application. ...........24

        b.    Lee failed to establish that he was terminated "because of" his alleged PTSD.......................................32

    2.    The District Court correctly concluded that Lee did not satisfy his burden of raising a genuine issue of material fact that L3Harris's reasons for terminating Lee's employment were pretextual...................................................35

C.    The Dismissal of Lee's Retaliation Claims Should Be Affirmed......40

D.    The District Court Correctly Dismissed Lee's HWPA Claim. ..........41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atel Fin. Corp. v. Quaker Coal Co.*,
321 F.3d 924 (9th Cir. 2003) ........................................................................18

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) ........................................................................24

*Brown v. City of Tucson*,
336 F.3d 1181 (9th Cir. 2003) ......................................................................21

*Chancey v. Fairfield S. Co.*,
949 F. Supp. 2d 1177 (N.D. Ala. 2013), *aff'd* 580 F. App'x 718
(11th Cir. 2014)..............................................................................................30

*Cleveland v. Pol'y Mgmt. Sys. Corp.*,
526 U.S. 795 (1999)..............................................................................*passim*

*Corales v. Bennett*,
567 F.3d 554 (9th Cir. 2009) ...................................................................18, 3

*Crossley v. CSC Applied Techs., LLC*,
569 F.App'x 196 (5th Cir. 2014).............................................................27, 28

*Curley v. City of N. Las Vegas*,
772 F.3d 629 (9th Cir. 2014) ........................................................................26

*Dark v. Curry County*,
451 F.3d 1078 (9th Cir. 2006) ......................................................................33

*Disability Law Ctr. of Alaska, Inc. v. Anchorage Sch. Dist.*,
581 F.3d 936 (9th Cir. 2009) ........................................................................18

*Feldman v. Am. Mem'l Life Ins. Co.*,
196 F.3d 783 (7th Cir. 1999) ..................................................................27, 28

*French v. Hawaii Pizza Hut, Inc.*,
105 Hawai'i 462, 99 P.3d 1046 (2004)..........................................................23

*Gambini v. Total Renal Care*,
    486 F.3d 1087 (9th Cir. 2007) ............................................................33

*Hackett v. City of S. Bend*,
    956 F.3d 504 (7th Cir. 2020) ..............................................................21

*Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128 (9th
    Cir. 2001) ............................................................................33, 34, 35

*Hutton v. Elf Atochem N. Am., Inc.*,
    273 F.3d 884 (9th Cir. 2001) ..............................................................23

*Kimbro v. Atlantic Richfield Co.*,
    889 F.2d 869 (9th Cir. 1990) ..............................................................33

*Manatt v. Bank of America, NA*,
    339 F.3d 792 (9th Cir. 2003) .........................................................32, 42

*Mayes v. WinCo Holdings, Inc.*,
    846 F.3d 1274 (9th Cir. 2017) ............................................................18

*Mayo v. PCC Structurals, Inc.*,
    795 F.3d 941 (9th Cir. 2015) .......................................................*passim*

*Murray v. Mayo Clinic*,
    934 F.3d 1101 (9th Cir. 2019) .....................................................*passim*

*O'Brien v. R.C. Willey Home Furnishings*,
    748 F. App'x 721 (9th Cir. 2018) ........................................................32

*Pietro v. Walt Disney Co.*,
    SACV11-0819, 2012 WL 4755415 (C.D. Cal. Oct. 4, 2012) ...........................35

*Raytheon Co. v. Hernandez*,
    540 U.S. 44 (2003)....................................................................22, 23, 36

*Reed v. Petroleum Helicopters, Inc.*,
    218 F.3d 477 (5th Cir. 2000) ..............................................................29

*Schefke v. Reliable Collection Agency, Ltd.*,
    96 Hawai'i 408, 32 P.3d 52 (2001)......................................................22

*Schuler v. Chron. Broad. Co. Inc.*,
   793 F.2d 1010 (9th Cir. 1986) ..............................................................36

*Smith v. Clark Cty. Sch. Dist.*,
   727 F.3d 950 (9th Cir. 2013) ................................................................27

*Smith v. Marsh*,
   194 F.3d 1045 (9th Cir. 1999) ......................................................*passim*

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ......................................................*passim*

*Yonemoto v. Shulkin*,
   725 F. App'x 482 (9th Cir. 2018) ..................................................24, 25

## Statutes

42 U.S.C. § 2000e-5(e)(1) ........................................................................21

Hawai'i Revised Statutes ("**HRS**") § 378-2 ......................................*passim*

HRS § 368-11(c)(1) ..................................................................................21

## Other Authorities

EEOC Guidance, EEOC-NVTA-2008-3 (Sept. 25, 2008) ......................34

**DEFENDANT-APPELLEE**
**L3HARRIS TECHNOLOGIES, INC.'S REDACTED ANSWERING BRIEF**

## I.   STATEMENT OF ISSUES PRESENTED FOR REVIEW

Defendant-Appellee L3Harris Technologies, Inc. ("**L3Harris**") agrees with Plaintiff-Appellant Preston Lee ("**Lee**") that the issue presented in this appeal concerns the propriety of the District Court's order granting L3Harris's motion for summary judgment ("**MSJ Order**").  However, Lee's Opening Brief ("**OB**") did not raise any arguments regarding the dismissal of certain claims by the District Court. Specifically, Lee did not make any arguments regarding the dismissal of his discrimination claims premised on events prior to the termination of his employment, did not address the District Court's dismissal of his federal and state retaliation claims, and did not make any arguments regarding the dismissal of his Hawaiʻi Whistleblower Protection Action ("**HWPA**") claim premised on the allegation that Lee objected to the handling of his security card.  Accordingly, Lee has waived any argument as to the dismissal of those claims.  *See, e.g.*, *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived").

## II.   CONCISE STATEMENT OF THE CASE

### A.   Lee's Employment at L3Harris and the Events Leading to His Termination

L3Harris is a civilian contractor that provided services to the Navy at the

Pacific Missile Range Facility ("**PMRF**") on Kauai until March 31, 2021. 2-ER-240 (L3Harris Concise Statement of Facts ("**CSOF**") Declaration of John Kreider (**Kreider Decl.**) ¶ 2). L3Harris supplied these services with a joint venture partner, Keaki Technologies, LLC ("**Keaki**"). *Id.* The joint-venture was called "Manu Kai." *Id.*

Lee worked as a painter at PMRF until his employment was terminated on June 22, 2020. 2-ER-246, 255 (FAC ¶¶ 13, 90). Lee and his co-workers were members of the International Brotherhood of Electrical Workers ("**IBEW**"). 1-SER-00005 (MSJ Declaration of Danielle Stewart (**Stewart Decl.**) ¶ 3). Lee's work was directed by lead man Sean Igne. Lee and Igne's supervisor was Facilities Supervisor Rodney Martin. *Id.*; 2-SER-00091-92 (Lee's Depo. Trans. (MSJ Ex. B) ("**Lee Tr.**") at 16:6-16:10; 17:22-17:24).

Lee could be volatile, becoming angry with his co-workers over minor issues. 2-ER-235 (MSJ Declaration of Rodney Martin (**Martin Decl.**) ¶ 3). Martin spoke to Lee at various times about the need to be civil towards his co-workers and remain calm and professional. *Id.* Lee admitted that handling disagreements with co-workers in a calm manner was a requirement for his job and that threatening a co-worker violated company policy. 2-SER-00093, 96 (Lee Tr. at 23:11-14; 27:15-21); 2-SER00259-300 (MSJ Exs. X-Y); 2-ER-214 (L3Harris CSOF ¶ 4); 2-ER-092 (Lee CSOF ¶ 4).

1. **In March 2019, Lee disclosed that he received a 100 percent disability rating due to PTSD.**

In March 2019, L3Harris learned that Lee had been sharing with his co-workers that he had been diagnosed with PTSD and had received a 100 percent disability rating from the Department of Veterans Affairs ("**VA**"). 1-SER-00005 (Stewart Decl. ¶ 4).

On March 13, 2019, human resources representatives met with Lee regarding his disclosures and inquired if Lee needed any accommodations. 2-SER-00166 (Lee Tr. at 178:5-178:12). During the meeting, Lee confirmed that he had been diagnosed with PTSD, and denied the need for any accommodation. 2-SER-00167-168 (Lee Tr. at 179:15-180:1). While Lee contends that he was asked inappropriate questions during the meeting, no disciplinary action was taken against Lee at this meeting. 1-SER-00005 (Stewart Decl. ¶4); 2-SER-00168 (Lee Tr. at 180:2-180:19).

2. **Lee had a profanity-laced outburst at Igne because of an instruction to wear pants while pressure washing.**

Lee identified no issues during the eight months that followed the March 2019 meeting, up until a disciplinary meeting in November 2019. That disciplinary action was prompted by an incident on November 6, 2019, which began when Igne observed Lee pressure-washing while wearing shorts and asked him to put on rain pants. 2-SER-00094 (Lee Tr. at 24:2-24:7); 3-ER-380 (MSJ Ex. O). Lee could not hear Igne over the noise of the gasoline-powered pressure washer, so Igne attempted

to get Lee's attention by honking and yelling. 2-SER-00097-98 (Lee Tr. at 30:22-31:4). Lee's co-worker brought him a pair of rain pants and Lee put them on and continued working. 2-SER-00094 (Lee Tr. at 24:7-24:12).

Later that day, Lee went to the paint shop office where Igne was seated and began yelling and swearing at Igne, threatening that if Lee had to wear PPE (Personal Protective Equipment) then Igne did as well, and Igne better be wearing PPE on Monday, or else Lee would turn Igne in. 3-ER-380 (MSJ Ex. O); 2-SER-00101-103 (Lee Tr. at 37:21-38:16; 39:11-39:22). Igne responded, "why, are you going to turn me in?" 3-ER-380 (MSJ Ex. O); 2-SER-00103 (Lee Tr. at 39:23-39:24). In response, Lee returned and continued yelling and swearing at Igne. 3-ER-380 (MSJ Ex. O); 2-SER-00095, 2-SER-00103-104 (Lee Tr. at 25:6-25:15; 39:25-40:5).

Igne lodged a complaint about the incident with Martin. 2-ER-235-236 (Martin Decl. ¶4); 3-ER-377-379 (Ex. N); 2-SER-00104-105 (Lee Tr. at 40:10-41:16). In response to Igne's complaint, Martin interviewed and obtained signed statements from Lee and the three co-workers (David Hesapene, Mark Vegas, and Gilbert Castro) who heard the incident from the office next door. 2-SER-00105 (Lee Tr. at 41:17-41:20); 2-ER-235-236 (Martin Decl. ¶ 4); 3-ER-380-384 (Exs. O-R). In his signed statement, Lee admitted he was "mad and [he] yelled and swore at [Igne] many times in a loud disruptive manner." 3-ER-380 (Ex. O); 2-SER-00109-111 (Lee Tr. at 46:17-46:20; 47:23-48:1) (admitting that the contents of his

4

statement are an accurate account of the incident).

Lee's co-workers similarly supported that Lee was angry and swore at Igne. 3-ER-381-384 (Exs. P-R to MSJ). Hesapene reported that the next day, Lee said he "was going to punch Sean [Igne] through his face." 3-ER-381 (MSJ Ex. P). Lee did not dispute having made a statement like that, but said he did not intend to actually hit Igne. 2-SER-00112-113 (Lee Tr. at 49:16-50:18).

3.    Lee claimed to be unable to work for more than four months after receiving a written warning concerning his conduct toward Igne.

On November 18, 2019, Martin and a HR representative met with Lee to issue a written warning for his unprofessional conduct toward Igne. 3-ER-385-386 (MSJ Ex. S); 2-ER-235-236 (Martin Decl. ¶ 4); 2-SER-00114 (Lee Tr. at 53:5-53:25). The warning did not include a suspension, demotion, or cut in pay. 3-ER-385-386 (MSJ Ex. S); 2-SER-00117-118 (Lee Tr. at 64:14-65:10).

During the meeting, Lee accused Igne of stealing gasoline from the base. 2-ER-236 (Martin Decl. ¶ 6); 2-SER-00115 (Lee Tr. at 55:21-55:24). Martin told Lee that they could discuss those accusations later and the purpose of the meeting was to discuss Lee's conduct towards Igne. 2-ER-236 (Martin Decl. ¶ 6). Martin explained the expectation that Lee act in a professional manner toward co-workers and reviewed the "Respect in the Workplace" training Lee previously received. 2-ER-237 (Martin Decl. ¶ 8). Lee sat with his head down during this discussion, and it was apparent he was not listening. *Id.*; *see also* 2-SER-00116 (Lee Tr. at 58:3-21)

5

(admitting that what Martin was saying "was going in one ear and coming out the other").

At the conclusion of the meeting, Lee said that he needed to see his doctor and voluntarily left work. 2-ER-253 (FAC ¶ 77); 2-ER-237-238 (Martin Decl. ¶ 9); 2-SER-00118-120 (Lee Tr. at 65:11-65:16; 67:3-67:8). Subsequently, Lee filed a workers' compensation claim because ███████████████. 2-SER-00123-124 (Lee Tr. at 77:25-78:9); 2-SER-00252 (MSJ Ex. K). Lee submitted doctor's notes claiming he was unable to work for the remainder of November and all of December, January, February, and March. *See* 2-SER-00253-258 (MSJ Exs T and U).

### 4.  L3Harris and Keaki investigated Lee's allegation that Igne stole gas.

While Lee was on leave, Martin investigated Lee's allegation that Igne was stealing gasoline and found no evidence to support it. 2-ER-238 (Martin Decl. ¶ 10).

In December 2019, Ross West, a Keaki program manager, advised L3Harris that Lee had made a complaint to the Navy that Igne was stealing gasoline. 1-SER-00006 (Stewart Decl. ¶ 6); 2-SER-00126-127 (Lee Tr. at 83:20-84:3). Keaki assigned its employee Scott Taylor to investigate the matter. 1-SER-00006 (Stewart Decl. ¶ 6); 3-ER-389-405 (MSJ Ex. V).

In Taylor's report, which Keaki shared with L3Harris (1-SER-00006 (Stewart Decl. ¶ 6)), Taylor wrote when he interviewed Lee by telephone, Lee said Igne had been stealing gas from 2007-2010. 3-ER-393 (MSJ Ex. V at 5); 2-SER-00128 (Lee

Tr. at 93:11-93:19).  When asked why he was only reporting the alleged theft in 2019, Taylor said Lee responded, "Because he just turned me in, so I will turn him in." 3-ER-393 (MSJ Ex. V at 5); *see also* 2-SER-00129-130 (Lee Tr. at 94:15-95:16) (testifying that he made the report in 2019 because he was "fed up already").

Taylor reported that Lee "talked in a rage with excessive profanity throughout," and he "was shocked by [Lee's] degree of anger, given that he was about three weeks removed from his 18 Nov 19 counselling." 3-ER-394 (MSJ Ex. V at 6).  Taylor also reported that the three witnesses Lee said could corroborate the theft allegation—Guy Fujita, Gilbert Castro, and David Hesapene—"all denied ever observing Sean Igne steal gas." 3-ER-391 (MSJ Ex. V at 3).  Taylor's report concluded that a preponderance of evidence did not support theft of gas by Igne, and that "revenge is the clear motive for [Lee] making the allegation." 3-ER-392 (MSJ Ex. V at 4).

Taylor's report, which included his interview statements with Lee's co-workers, also stated that Lee "has demonstrated a pattern of violent behavior." 3-ER-391, 397-405 (MSJ Ex. V at 3, 9-17).  The report stated that if Lee "returned to his assigned position at the end of his medical leave, it is likely that the hostile work environment will further deteriorate into violence." 3-ER-392 (MSJ Ex. V at 4). When Keaki transmitted Taylor's report, Keaki told L3Harris it needed to "elevate" the concerns to a corporate level for consideration. 3-ER-389 (MSJ Ex. V at 1); *see*

*also* 1-SER-00006 (Stewart Decl. ¶ 6); 2-ER-241 (Kreider Decl. ¶ 4).

After receiving Taylor's report, L3Harris also received statements from IBEW that were signed by some of Lee's co-workers in which they expressed concern for their safety if Lee returned to the workplace. 1-SER-00006-7 (Stewart Decl. ¶ 7).

5.   L3Harris made the initial decision to terminate Lee's employment in January 2020.

In January 2020, after reviewing the circumstances involving the incident between Lee and Igne in November 2019, the statements obtained by Taylor and the statements presented by IBEW, L3Harris's human resources business partner recommended terminating Lee because of Lee's aggressive conduct towards his co-workers, in order to maintain a safe and healthy workplace.   1-SER-00006-7 (Stewart Decl. ¶ 7).  A L3Harris manager approved the termination in January 2020. 2-ER-241 (Kreider Decl. ¶ 4).  The recommendation and approval had nothing to do with PTSD or any other alleged medical condition or disability. 2-ER-241-242 (Kreider Decl. ¶ 5); 1-SER-00007 (Stewart Decl. ¶ 8).

However, shortly before human resources was going to notify Lee of his termination, Lee presented a doctor's note extending his leave. 1-SER-00007 (Stewart Decl. ¶ 9)*.* Since L3Harris generally does not terminate employees while

8

on leave, the company stopped implementation of the termination at that time.[1] *Id.*

> 6. Lee made concerning statements during an independent psychological examination in February 2020.

In February 2020, in conjunction with his workers' compensation claim, Lee underwent an independent psychological exam ("**IPE**") conducted by clinical psychologist Dr. Peter Bianchi.[2] 1-SER-00007-8 (Stewart Decl. ¶ 10); 2-SER-00301-315 (MSJ Ex. Z).

Dr. Bianchi issued a report dated February 4, 2020 that explained, among other things, that Lee: ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████ 2-SER-

00307-308 (MSJ Ex. Z at 7-8) (emphasis added).

---

[1] After L3Harris put the termination on hold, Lee filed a charge of discrimination alleging disability discrimination and retaliation on February 27, 2020. 3-ER-370-371 (MSJ Ex. L).

[2] ███████████████████████████████████████████████
████ 2-SER-00301(MSJ Ex. Z at 2); 2-SER-00139 (Lee Tr. at 104:8-104:22).

Testing performed by Dr. Bianchi revealed that Lee had ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████ 2-

SER-00310 (MSJ Ex. Z at 10) (emphasis added).  Dr. Bianchi's ███████████

████████████ 2-SER-00310 (MSJ Ex. Z at 10-11).

Dr. Bianchi ██████████████████████████████████

████████████████████████████████████████████████

███████████████████████ 2-SER-00314 (MSJ Ex. Z

at 14).

████████████████████████████████████████ his doctor released him to

return to work effective April 1, 2020.  2-SER-00254 (MSJ Ex. U at 5); 2-SER-

00125 (Lee Tr. at 80:11-20).  To evaluate how best to address the situation, L3Harris

placed Lee on paid administrative leave until a decision could be made regarding

Lee's employment.  1-SER-00008 (Stewart Decl. ¶ 11).  On April 7, 2020, Dr.

Bianchi ███████████████████████████████████████

████████████████████████████████████████████████

███████████████████████ 2-SER-00316 (MSJ Ex. AA).

7.    <u>L3Harris terminated Lee's employment in June 2020.</u>

On June 22, 2020, L3Harris terminated Lee's employment.  1-SER-00009

(Stewart Decl. ¶ 14); 2-ER-255 (FAC ¶ 90). The final termination decision was based on several factors. 1-SER-00009 (Stewart Decl. ¶ 14). First, Lee's comments to Dr. Bianchi regarding ███████████████████████████████ raised concerns about employee safety and disruption to the workplace. *Id.* Lee's statements suggested that he had not learned from the warning he received in November 2019. *Id.* Second, Keaki would not allow Lee access to the base unless L3Harris could guarantee that he would not be a danger to himself or others, which L3Harris could not do. *Id.* Combined with the concerns described above that prompted the initial discussion to terminate Lee's employment in January 2020, the human resources business partner again recommended that L3Harris terminate Lee's employment, which decision was approved. *Id.*; 2-ER-242 (Kreider Decl. ¶ 6).

## B. The Litigation in the District Court

On November 13, 2020, Lee filed his initial complaint in the District Court. 1- SER-00013-31 (Complaint). On December 12, 2020, Lee filed a second Charge of Discrimination with the Hawai'i Civil Rights Commission and EEOC, which included allegations regarding the termination of his employment. 3-ER-376 (MSJ Ex. M at 4). After receiving a right to sue letter, Lee filed a First Amended Complaint ("**FAC**") that included allegations regarding his termination. 2-ER-243-265 (FAC). The FAC asserted claims for disability discrimination and retaliation under the Americans with Disabilities Act ("**ADA**") and Section 378-2 of the

11

Hawai'i Revised Statutes ("**HRS**"), and a claim under the HWPA. *Id.*

L3Harris subpoenaed records from the VA pertaining to Lee's application for disability benefits, including statements by Lee and any representative in support of such applications. 2-ER-220 (Amanda M. Jones Decl. ¶ 4); 2-ER-342-343, 3-ER-344-355 (MSJ Ex. C).

On September 29, 2021, L3Harris filed a motion for summary judgment seeking dismissal of all claims.[3] 2-ER-157-343. 3-ER-344-461 (MSJ); 2-SER-0033-317 (MSJ submitted under seal). The motion argued that Lee's allegation regarding events prior to the termination of his employment failed as a matter of law. 2-ER-176-180 (MSJ at 11-15); *see* 2-ER-050-51 (MSJ Reply at 1-2).

With respect to Lee's claim that he was discriminated against based on a disability when he was terminated, L3Harris argued that Lee failed to establish a *prima facie* case of discrimination because he could not demonstrate that (1) he was a "qualified individual" and should be estopped from asserting he was qualified due to his statements in support of his successful VA disability benefits application, and

---

[3] On the same day, L3Harris filed a motion to seal certain documents submitted in support of its summary judgment motion, including records produced by the VA in response to the subpoena. 3-ER-472 (Dkt. 48). The District Court granted the motion. 3-ER-473-474 (Dkt. 53). The excerpts of record submitted by Lee for this appeal omitted the documents filed under seal below. Because those documents were submitted in support of the summary judgment motion and are relevant to the issues raised in this appeal, L3Harris will be filing concurrently with this brief a motion to submit those documents sealed below under seal with this Court.

(2) he was terminated because of his alleged PTSD. 2-ER-180-186 (MSJ at 15-21); 2-ER-053-061 (MSJ Reply at 4-12). In addition, L3Harris argued that Lee could not demonstrate that the legitimate, non-discriminatory reasons for his termination were pretextual. 2-ER-061-62 (MSJ Reply at 12-13).

With respect to his retaliation claims, L3Harris argued that Lee could not establish a causal connection between his termination and any alleged protected activity, and even if he could make a *prima facie* case, Lee could not demonstrate that the reasons for his termination were pretextual. 2-ER-186-189 (MSJ at 21-24). L3Harris challenged Lee's HWPA claim for similar reasons. 2-ER-189-191 (MSJ at 24-26); 2-ER-062-63 (MSJ Reply at 13-14).

### 1.    Lee's successful disability benefits application

L3Harris's summary judgment motion argued that Lee should be estopped from asserting he was a "qualified individual" for purposes of his disability discrimination claims based on his successful application to the VA in which Lee claimed to be 100 percent disabled due to ███████████████. 2-SER-00056-61 (MSJ at 15-20). The records subpoenaed from the VA and submitted in support of L3Harris's argument that Lee should be estopped from asserting he was a "qualified individual" are discussed below.

In February 2019, the VA issued a decision awarding benefits to Lee, granting his request for an evaluation that he was 100 percent disabled due to ███████

███████████████████████ 2-SER-00190-195 (MSJ Ex. D). The VA awarded monetary benefits premised on the 100 percent rating, which Lee continues to collect. 2-SER-00196-203 (MSJ Ex. E); 2-SER-00248-249 (MSJ Ex. J at response #5); 2-SER-00146 (Lee Tr. at 130:4-6).

The VA's 2019 decision listed the evidence submitted by Lee that the VA relied upon, which included the following documents submitted in support of L3Harris's motion: ████████████████ (2-SER-00204-209 (MSJ Ex. F)); █████████████████████████████

██████████████████ 2-SER-00210-216 (MSJ Ex. G))[4]; ██████

███████████████████████████████████ (2-SER00217-233 (MSJ Ex. H)); ████████████████████████

██████ (2-SER-00234-251 (MSJ Ex. I)). 2-SER-00192-193 (MSJ Ex. D at 2-3).

In his Statement in Support of Claim, Lee submitted 11 pages of Mental Health Diagnostic Notes to support Lee's assertion that he was 100 percent disabled ████████████ 2-SER-00218, 222 (MSJ Ex. H at 1, 5). Those medical records state that Lee reported being ███████████████████████████

---

[4] ████████████████████████████████

████████████████████████████████ 2-SER-00211 (MSJ Ex. G at 2).



████████████████████████████████████████ ████

█████████████████████████ 2-SER-00224 (MSJ Ex. H at 7). The records

also reflected that Lee reported ███████████████████████████████

███████████████████████████████████████ 2-SER-00230

(MSJ Ex. H at 13). (emphasis added).

In Lee's 2018 ███████████ submitted in support of his VA benefits

application, Lee reported that ████████████████████████████████

████████████████████████████████████ 2-SER-

00236 (MSJ Ex. I at 2). The evaluation assessed that Lee has ███████████

████████████████████████████████ 2-SER-00237

(MSJ Ex. I at 3). In describing his "post-military" occupational history, the

assessment reported ███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ 2-SER-00238-

239 (MSJ Ex. I at 4-5)(emphasis added). The assessment also stated that Lee

reported ████████████████████████████████████

████████████████ 2-SER-00239 (MSJ Ex. I at 5).

---

[5] Lee admitted to ██████████████████████████████████████

████████████████ 2-SER-00156-161, 181-182 (Lee Tr. at

147:20-152:3; 209:13-210:20).

15

Based on Lee's statements, the evaluation concluded Lee met PTSD criteria,

including ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████ 2-SER-00242 (MSJ Ex. I at 8). Based on

Lee's reports, the assessment found Lee suffered from symptoms including █

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ 2-SER-00243 (MSJ Ex. I at 9).

Consistent with that evaluation and other documents submitted by Lee, the

VA determined that █████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ among other

things.  2-SER-00194 (MSJ Ex. D at 4).  The decision noted that Lee's 100 percent

rating is ████████████████████████████████████████████████████████

████████████████ *Id.*

Lee's primary response to these submissions was to claim that L3Harris did

not rely upon the VA records in deciding to terminate Lee's employment.  2-ER-081

(MSJ Opp. at 16); 2-ER-121 (Lee Decl. ¶23). L3Harris confirmed it was not arguing otherwise, but pointed out that estoppel did not impose such a requirement. 2-ER-057-058 (MSJ Reply at 8-9). L3Harris argued Lee should be estopped because his statements in this litigation about his ability to work with others were contradicted by the statements made in documents that Lee submitted to the VA in support of his successful disability benefits application, and that Lee had not even attempted to reconcile the contradictory assertions. *Id.*

> 2. The District Court granted L3Harris's summary judgment motion

The District Court granted the summary judgment motion, 1-ER-043 (MSJ Order), and entered judgment in favor of L3Harris and against Lee, 1-ER-002 (Judgment).

In its order, the District Court dismissed Lee's claims of harassment on the grounds that they were time-barred. 1-ER-019-21 (MSJ Order at 17-19). With respect to his disability discrimination claims relating to his termination, the District Court rejected L3Harris's argument that Lee failed to establish a *prima facie* case, including the argument that Lee should be estopped from asserting he was a "qualified individual," but dismissed the claims because Lee failed to demonstrate that the legitimate, non-discriminatory reasons articulated by L3Harris for Lee's termination were pretextual. 1-ER-022-35 (MSJ Order at 20-33).

The District Court dismissed Lee's retaliation claims because he failed to

make a *prima facie* case, and similar to his discrimination claims, Lee failed to establish the reasons articulated by L3Harris for his termination were pretextual. 1-ER-039-40 (MSJ Order at 37-38). Lastly, the District Court dismissed Lee's HWPA claim because he failed to demonstrate he was terminated because of the alleged protected activities, and also because Lee could not demonstrate pretext. 1-ER-040-43 (MSJ Order at 38-41).

### III.   STANDARD OF REVIEW

Summary judgment is "appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1277 (9th Cir. 2017) (citation and quotation omitted). This Court reviews the grant of summary judgment and questions of law *de novo*. *Id.*; *Disability Law Ctr. of Alaska, Inc. v. Anchorage Sch. Dist.*, 581 F.3d 936, 938 (9th Cir. 2009).

This Court may "affirm a district court's judgment on any ground supported by the record, whether or not the decision of the district court relied on the same grounds or reasoning" that the appellate court adopts. *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003); *see also Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009) ("We may affirm on any grounds supported by the record.") (citation omitted).

## IV.   **SUMMARY OF ARGUMENT**

Lee did not raise any arguments challenging the District Court's dismissal of his claims of harassment as time-barred.  Because Lee's Opening Brief failed to address that issue or make any arguments regarding the dismissal of claims premised on events prior to his termination, Lee has waived any arguments regarding the dismissal of those claims.

Lee's Opening Brief does challenge the dismissal of his disability discrimination claims premised on the termination of his employment.  *See* OB at 16.  The District Court's dismissal of these claims should be affirmed for two reasons.  First, Lee failed to establish the second and third elements of a *prima facie* case of discrimination.  Although the District Court found that Lee had made a *prima facie* case, the record establishes that Lee did not meet his burden of establishing he was a "qualified individual," and he should be estopped from arguing otherwise due to the statements Lee submitted in support of his successful VA disability benefits application.  In addition, Lee failed to establish his employment was terminated because of his alleged PTSD.  Second, even if Lee had made a *prima facie* case, the District Court correctly concluded that Lee failed to demonstrate that the legitimate, non-discriminatory reasons articulated by L3Harris for Lee's termination were pretextual.

Lee's Opening Brief did not make any arguments regarding the dismissal of

his retaliation claims under the ADA and HRS § 378-2. Accordingly, Lee has waived any challenge to the dismissal of those claims, and the District Court's order granting L3Harris's motion for summary judgment should be affirmed.

Lastly, Lee does challenge the dismissal of his HWPA claim in part. He did not raise any arguments regarding the dismissal of claims premised on his allegation that he was terminated for allegedly objecting to the proposed handling of his security card. Lee did argue that the District Court erred in finding a lack of causation, but his arguments conflict with the record below. His assertion that Lee made an allegation of gas theft months earlier than he originally claimed actually undermines any argument that temporal proximity creates an inference of causation. Lee proffered no evidence that he was terminated because he accused Igne of gas theft, and the District Court also correctly held that Lee's HWPA claim fails because L3Harris articulated legitimate reasons for his termination and Lee failed to demonstrate that those reasons were pretextual.

The District Court's judgment in L3Harris's favor should be affirmed.

## V. <u>ARGUMENT</u>

### A. Lee Did Not Challenge the Dismissal of His Claims Premised on Events Prior to His Termination, and Thus, the District Court's Dismissal of Those Claims Should Be Affirmed.

L3Harris moved for summary judgment on Lee's disability discrimination claims that were premised on events prior to the termination of his employment on

20

the grounds that such claims failed as a matter of law. 2-ER-176-180 (MSJ at 11-15); *see* 2-ER-050-51 (MSJ Reply at 1-2). The District Court correctly noted that Lee's opposition did "not address any of L3Harris's arguments relating to Lee's purported disability discrimination claims based on events prior to his employment termination." 1-ER-019 (MSJ Order at 17).

The District Court agreed that Lee's claims of harassment[6] premised on events prior to his termination were time-barred because Lee did not file a charge of discrimination with the Equal Employment Opportunity Commission or Hawai'i Civil Rights Commission within 180 or 300 days after the alleged conduct at issue occurred. 1-ER-021 (MSJ Order at 19). Thus, the court entered summary judgment on those claims. *Id.*

Lee's Opening Brief made no arguments about the District Court's decision

---

[6] The District Court acknowledged it is not clear whether a plaintiff can bring a claim for harassment or hostile work environment under the ADA. *See* 1-ER-019 (MSJ Order at 17) (citing *McIntyre v. Eugene Sch. Dist. 4J,* 976 F.3d 902, 916 (9th Cir. 2020); *see also Brown v. City of Tucson,* 336 F.3d 1181, 1190 (9th Cir. 2003). However, the court correctly determined that if such a claim were actionable, Lee would be required to exhaust his administrative remedies by filing a charge of discrimination within 180 or 300 days after the purported unlawful employment practice. *See* HRS § 368-11(c)(1) (requiring state law discrimination claims to be filed with the HCRC within 180 days after the alleged unlawful discriminatory practiced occurred); 42 U.S.C. § 2000e-5(e)(1) (300 day deadline for federal discrimination claims).

It is undisputed that Lee filed his first Charge of Discrimination on February 27, 2020, which is more than 180 or 300 days after the alleged harassment by his coworkers and alleged improper questioning by HR occurred. 1-ER-021 (MSJ Order at 19); 3-ER-370-371 (MSJ Ex. L).

regarding the untimeliness of his harassment allegations. Thus, any challenge to the District Court's determination on this issue was waived. *Hackett v. City of S. Bend*, 956 F.3d 504, 510 (7th Cir. 2020) ("An appellant who does not address the rulings and reasoning of the district court forfeits any arguments he might have that those rulings were wrong"); *see also Smith*, 194 F.3d at 1052 ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived"). Lee likewise does not make any arguments on appeal about the dismissal of his claims premised on events other than the termination of his employment. *See* OB.

Accordingly, this Court should affirm the dismissal of Lee's claims premised on events prior to the termination of Lee's employment.

## B. The Dismissal of Lee's Disability Discrimination Claims Premised on the Termination of His Employment Should be Affirmed.

Lee's Opening Brief agrees that the District Court appropriately analyzed his ADA and state law disability discrimination claims premised on the termination of Lee's employment using the *McDonnell Douglas* burden-shifting framework. OB at 16-17; *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 & n.3 (2003) (noting that the Courts of Appeals have consistently used the *McDonnell Douglas* framework in analyzing disparate treatment claims in summary judgment motions); *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 425, 32 P.3d 52, 69 (2001), as amended (Oct. 11, 2001) (explaining that the Hawai'i Supreme Court had adopted the *McDonnell Douglas* framework to analyze discrimination claims

22

brought under HRS § 378-2).

Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case by showing that "(1) he is a disabled person within the meaning of the statute; (2) he is a qualified individual with a disability; and (3) he suffered an adverse employment action because of his disability." *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001); *accord French v. Hawaii Pizza Hut, Inc.*, 105 Hawai'i 462, 467, 99 P.3d 1046, 1051 (2004). With respect to the third element (causation), the plaintiff must show that the employment action would not have occurred **but for** his disability. *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) (joining other circuits in holding that the "motivating factor" standard for causation does not apply to ADA discrimination cases), *cert. denied*, 140 S. Ct. 2720 (2020).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *Raytheon*, 540 U.S. at 49 n.3. If the defendant meets this burden, then the plaintiff must offer evidence demonstrating the explanation is pretextual. *Id.*

> 1. This Court should affirm the dismissal of Lee's discrimination claims on the alternative ground that Lee failed to establish a *prima facie* case.

This Court should affirm the District Court dismissal of Lee's discrimination claims because the record establishes that Lee could not establish the second and third elements a *prima facie* case of discrimination. The District Court rejected

L3Harris's arguments regarding Lee's failure to make a *prima facie* case. However, for the reasons discussed below, Lee's inability to establish the second and third elements of the *prima facie* case provides alternative grounds upon which the lower court's dismissal of Lee's claims may be affirmed. *See Corales*, 567 F.3d at 562.

> a. *Lee did not establish that he is a "qualified individual" and should have been estopped from arguing he was qualified based on the statements in his successful disability benefits application.*

To establish a prima facie case of disability discrimination, the plaintiff bears the burden of proving that he is a "qualified individual with a disability," meaning that he can perform the essential functions of his job with or without a reasonable accommodation. *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *see also Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007). "If a disabled person cannot perform a job's 'essential functions' (even with a reasonable accommodation), then the ADA's employment protections do not apply." *Bates*, 511 F.3d at 989 (citations omitted).

The District Court appeared to reject the argument that Lee failed to establish he was qualified because "L3Harris only raises concerns with Lee's ability to appropriately handle stress and not interact with coworkers" and that there is "[n]o other evidence that Lee cannot perform the essential functions of his job has been provided." 1-ER-025 (MSJ Order at 23). However, the "ability to appropriately handle stress and interact with others" **is** an essential function of most jobs, and thus,

24

an employee's inability to meet that requirement alone does in fact render the individual unqualified. *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015); *see also Yonemoto v. Shulkin*, 725 F. App'x 482, 484 (9th Cir. 2018) (holding that an employee was not qualified where he could not "complete substantive work independently, take constructive criticism, and avoid interpersonal issues"). Importantly, Lee did not dispute that handling disagreements with co-workers in a calm manner was a requirement for his position and that threatening a co-worker violated company policy. *See* 2-ER-214 (L3Harris CSOF ¶ 4); 2-ER-092 (Lee CSOF ¶ 4); 2-SER-00093, 96 (Lee. Tr. at 23:11-14; 27:15-21); 2-SER-00259-300 (MSJ Exs. X-Y).

The District Court appeared to find a genuine issue of fact existed because it was "questionable" whether Lee's threat to punch Igne was credible[7] and because Lee's singular threat and interaction with Igne were not as extreme as the conduct in *Mayo*. 1-ER-024-25 (MSJ Order at 22-23). There are two problems with that

---

[7] Lee argues that David Hesapene, who reported Lee's threat to "punch Sean through his face" later changed his story about Lee. OB at 27. However, at his deposition taken in the case, Hesapene confirmed that what was reported in the statement he signed and gave to Rodney Martin in November 2019 (that Lee wanted to "punch Sean through his face") accurately reflected what Lee said the day after the incident with Igne because he was still "angry from the day before." 2-ER-215 (Lee CSOF ⁋ 19); 3-ER-452 (MSJ Ex. CC (Hesapene Depo.) at 28). At his deposition, Lee admitted he "might have said I like punch him in his face," but claimed that he was "just speaking out loud" and did not intend to hit him. 2-SER-00112-113 (Lee Tr. at 49:9-50:22).

conclusion.

First, the conclusion conflicts with this Court's recognition that the law does not require an employer to take the risk on whether an employee will act upon threats or wait for a violent incident before terminating an individual who claims he or she is disabled, particular in circumstances like those present here, where coworkers came forward with concerns about the threat-making employee's prior conduct and its impact on the workplace. *See Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014) (holding that an employer can terminate based on concerns about past threats); *Mayo*, 795 F.3d at 944 (recognizing that the ADA does put employers on a "razor's edge" by requiring that they retain an employee who has made threats toward others while subjecting the employer to being deemed negligent for retaining an individual if that person later hurt someone).

Second, the conduct by Lee leading to the decision to terminate his employment was not limited to the incident regarding Igne. In addition to the inappropriate incidents in November 2019, Lee also made a concerning statement to Dr. Bianchi about ███████████████████████████████ which suggested that Lee had not learned from the warning issued about Lee's conduct toward Igne. 2-SER-00307-308 (MSJ Ex. Z at 7-8), Following the November incident, statements submitted to L3Harris by the union and by Keaki's investigator also raised concerns about Lee's prior conduct and its impact on the work

environment. 1-SER-00006-7 (Stewart Decl. ¶ 7); 3-ER-389-405 (MSJ Ex. V).

Although Lee argued below and argues again on appeal that he was able to work with others without violence or threats, as L3Harris argued in its summary judgment motion, Lee should be estopped from making those assertions and from arguing that he was qualified given the statements that Lee submitted to the VA in support of his successful disability benefits application. 2-ER-180-185 (MSJ at 15-20); 2-ER-053-059 (MSJ Reply at 4-10); 2-SER-00056-61 (MSJ submitted under seal at 15-20).

The Supreme Court held in *Cleveland v. Political Systems Corporation* that a plaintiff can be estopped from establishing that he is a "qualified individual" under the ADA where the plaintiff previously applied for and received disability benefits[8] based on statements that genuinely conflict with the plaintiff's assertion that he can perform the essential functions of his job. 526 U.S. 795, 805-06 (1999); *see also Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 791 (7th Cir. 1999)

---

[8] *Cleveland* concerned statements made to obtain social security disability benefits, but this Court declined to limit *Cleveland* to social security benefits applications and has agreed with other jurisdictions that estoppel applies where the plaintiff has made statements in applications for other types of disability benefits that conflict with the plaintiff's statements in court in support of disability discrimination claims. *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 956 (9th Cir. 2013); *see also Crossley v. CSC Applied Techs., LLC*, 569 F.App'x 196 (5th Cir. 2014) (applying *Cleveland* in a case involving an application for VA disability benefits and affirming summary judgment where employee with PTSD made statements in her disability benefits application that conflicted with her assertion that she could perform the essential functions of her job).

("Although *Cleveland* clarified that an ADA claim is not estopped simply because an individual applied for or received [disability] benefits, a plaintiff cannot avoid summary judgment merely by asserting that she is a qualified individual if she made prior statements, in applying for [social security benefits], regarding her disability that are squarely contradictory.").

*Cleveland* made a distinction between conclusory statements in benefits applications, such as a statement that the individual is "unable to work," and factual assertions, such as "I cannot raise my arm above my head." 526 U.S. at 802, 806-07. The Court held that when a benefits application contains a conclusory statement, an ADA plaintiff must proffer a sufficient explanation for the apparent contradiction to avoid summary judgment. *Id.* at 806; *accord Smith*, 727 F.3d at 958–59 (clarifying that while "*Cleveland's* sufficient-explanation standard is not an exceedingly demanding one," ADA plaintiffs "cannot ignore the inconsistencies between their claims either" and must provide a sufficient explanation for the apparent contradiction); *see also Feldman*, 196 F.3d at 792 (affirming summary judgment for the employer where the plaintiff failed to offer an explanation for the contradiction between the statements in her disability benefits application and her statements in support of her ADA claim).

With respect to applications containing contradictory factual statements, the Court left undisturbed the decisions by many courts that preclude an ADA plaintiff

from avoiding summary judgment by submitting a declaration that conflicts with the individual's prior factual assertions. *Cleveland*, 526 U.S. at 807; *accord Crossley*, 569 F. App'x at 199 ("[W]hile an employee's boilerplate representation of total disability in a benefits application may be a legal conclusion that can, through an adequate explanation, be reconciled with a subsequent ADA suit, an employee's specific factual statements that she was unable to perform her essential job duties at the time of the adverse employment action entitle the employer to summary judgment, at least absent a particularized showing that reasonable accommodations were possible.") (citation omitted); *see also Reed v. Petroleum Helicopters, Inc.*, 218 F.3d 477, 480 (5th Cir. 2000) (recognizing the distinction between conclusory and factual statements and affirming summary judgment in favor of the employer based on conflicting factual statements by plaintiff and her doctor in her benefits applications).

The District Court recognized the applicability of the *Cleveland* analysis in evaluating Lee's ADA claim and his previous VA disability benefits claim. 1-ER-026 (MSJ Order at 24). The court rejected L3Harris's estoppel argument because the court concluded Lee's ADA claim did not genuinely conflict with his successful VA benefits application. 1-ER-027-28 (MSJ Order at 25-26). The court reasoned that the findings in Lee's PTSD evaluation did not necessarily preclude Lee from performing the essential functions of his job, the VA disability decision "did not

address Lee's ability to work," and Lee did not make such a claim in his disability application. *Id.*

However, estoppel is not limited solely to situations where a disability benefits application contains conclusory assertions that the individual is "unable to work." Estoppel also applies when a person claims to be 100 percent disabled and makes statements in the application for benefits that conflict with the assertion that the plaintiff can satisfy the requirements of his job. *See, e.g.*, *Chancey v. Fairfield S. Co.*, 949 F. Supp. 2d 1177, 1188-91 (N.D. Ala. 2013) (granting summary judgment and dismissing an ADA claim brought by an employee with PTSD where employee sought 100 percent disability benefits from the VA, and received a 50 percent disability rating, because although his application did not claim a complete inability to work, the disabling conditions he listed conflicted with the requirements of his job), *aff'd* 580 F. App'x 718, 719 (11th Cir. 2014).

Moreover, the District Court did not consider Lee's failure to offer an explanation for the contradictory statements in his successful application to the VA seeking a 100 percent disability rating and corresponding benefits. *Compare* 2-ER-058-59 (MSJ Reply at 9-10) (arguing that Lee had "not attempted to reconcile his statements to the VA with his current assertion that he is a qualified individual") *with* 1-ER-022-28 (MSJ Order at 20-26) (containing no finding or discussion about Lee's failure to offer an explanation).

30

Lee's contention that he was always able to control his emotions at work and "never threatened or physically harmed anyone," OB at 6[9], is flatly contradicted by the statements he made to the VA, which resulted in his 100 percent disability rating and receipt of benefits, including his report of a ████████████████ ███████ ████████████████████████████████████████████ 2-SER-00224, 230 (MSJ Ex. H at 7, 13), Lee's reported desire to ███████████████ ███████████████████████████████████████████████ ██████████████████████████████ 2-SER-00236, 237, 239 (MSJ Ex. I at 2, 3, 5).

Lee's reports about these occupational impairments were specifically identified as a basis for the VA's rating that Lee is 100 percent disabled. *See, e.g.* 2-SER-00234-251 (MSJ Ex. I) (finding ███████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████ 2-SER-00191-195 (MSJ Ex. D) (assigning a 100 percent disability evaluation based on, among other things, ███████████████████████████ ███████████████████████████████████████████████ ███████

---

[9] Lee made similar arguments below. 2-ER-080-083 (MSJ Opp. at 15-18).

Having convinced the VA to rate him 100 percent disabled due to these occupational problems specifically connected with working with others (and award monetary benefits consistent with that rating), Lee cannot now claim the opposite in this litigation. The problems documented in his submissions to the VA are precisely the issues that led to Lee's termination and the concerns expressed by his co-workers about Lee's behavior. The dismissal of his disability discrimination claims should be affirmed because Lee should be estopped from claiming that he was a "qualified individual," specifically as it related to the undisputed requirement that he handle stressful work situations without resorting to threats.

> ### b. Lee failed to establish that he was terminated "because of" his alleged PTSD.

The District Court's dismissal of Lee's disability claims can also be affirmed because Lee failed to establish the third element of a *prima facie* case, that is, that he was terminated "because of" PTSD. Lee does not dispute that L3Harris became aware of Lee's PTSD diagnosis no later than March 2019. OB at 20. The initial termination decision was made ten months later (in January 2020). 2-ER-242 (Kreider Decl. ¶ 6); 1-SER-00007 (Stewart Decl. ¶ 9). That is too long for temporal proximity to create in inference of causation.[10] In fact, Lee identifies no adverse

---

[10] *See, e.g.*, *O'Brien v. R.C. Willey Home Furnishings*, 748 F. App'x 721, 723 (9th Cir. 2018) (explaining that causation may be inferred if the adverse employment action takes place **shortly after** his employer discovers that he is disabled"); *cf. Manatt v. Bank of America, NA*, 339 F.3d 792, 802 (9th Cir. 2003) (declining to find

action between the disclosure in March 2019, and the disciplinary meeting eight months later, which occurred in response to Igne's complaint and the witnesses' statements about Lee's conduct toward Igne. Because Lee presented no evidence he was terminated "because of" PTSD, Lee failed to establish the third element of a *prima facie* case.[11]

Lee's Opening Brief argues that the District Court correctly ruled that there were genuine issues of material fact regarding this element, citing this Court's decision in *Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128 (9th Cir. 2001) for the proposition that "conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." OB at 19 (citing *Humphrey*, 239 F.3d at 1139-1140). The District Court accepted Lee's argument regarding *Humphrey*. 1-ER-029-30 (MSJ Order at 27-28). However, the reliance on *Humphrey* was misplaced.

As this Court recognized in *Mayo*, the issue in *Humphrey* and other similar

---

an inference of causation where "nine months lapsed between the date of Manatt's complaint and the Bank's alleged adverse decision"); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1068 (9th Cir. 2002) (determining that there was no temporal proximity between the protected activity and the termination to give rise to an inference of causation when the termination occurred nearly ten months after an employee filed her complaint).

[11] Lee argues that the District Court also relied on the fact that Dr. Bianchi's report, which L3Harris reviewed before deciding to terminate Lee, "highlighted some of Lee's PTSD symptoms." OB at 20. But in fact, Dr. Bianchi ███████████ ████████████ *See* 2-SER-00301-315 (MSJ Ex. Z).

cases[12] was whether a reasonable accommodation could have been provided to allow the employee to perform the essential functions of the job and could have prevented the disability-induced problem that led to the termination. *Mayo,* 795 F.3d at 946-47. Unlike the employee in *Humphrey*, Lee denied the need for an accommodation when the HR department inquired in March 2019 if he needed one. *See* 2-ER-126 (Lee Decl. at ¶¶ 59-60); 1-ER-030 (MSJ Order at 28); OB at 20. Lee did not argue that he ever requested any accommodation later, or that one could have provided to prevent the conduct that led to his termination.

Furthermore, as *Mayo* recognized, an employee whose inability to control his stress leads to threats is not a "qualified individual," even if the stress was caused by a disability. *Mayo,* 795 F.3d at 946-47. That an employee's disability caused the misconduct does not prevent an employer from imposing discipline for violations of legitimate conduct rules. *See, e.g.*, EEOC Guidance, EEOC-NVTA-2008-3 (Sept. 25, 2008), *available at* https://www.eeoc.gov/laws/guidance/applying-performance-and-conduct-standards-employees-disabilities (response to Question 9).

Lee's case is also distinguishable from *Humphrey* because Lee failed to present any evidence that his PTSD caused the conduct that led to his termination. Rather, Lee placed the blame for his workplace issues on others and downplayed his

---

[12] *See also Gambini v. Total Renal Care*, 486 F.3d 1087, 1094 (9th Cir. 2007); *Dark v. Curry County*, 451 F.3d 1078, 1089–90 (9th Cir. 2006); *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 879 (9th Cir. 1990).

actions. 2-ER-083-87 (MSJ Opp. at 18-22); *see also* OB at 18-21.

This Court has distinguished *Humphrey* under similar circumstances. In *Alamillo v. BNSF Railway Company*, this Court held that "no reasonable jury could find the requisite causal link" between the plaintiff's disability and attendance violations where the plaintiff produced no evidence that his disability caused the violations. 869 F.3d 916, 921 (9th Cir. 2017); *see also Pietro v. Walt Disney Co.*, SACV11-0819, 2012 WL 4755415, at *9 (C.D. Cal. Oct. 4, 2012) ("Unlike in *Humphrey*, where plaintiff produced documents from both a doctor and a psychologist attesting to this causal link, here Plaintiff's doctor wrote that Plaintiff 'can return to full duties with no restrictions on 4/14/2008.'").

Lee's failure to demonstrate that PTSD was the "but for" cause of his termination means that Lee could not establish the third element of a *prima facie* case. *Humphrey* does not help him. The dismissal of his disability discrimination claims should be affirmed on this alternative ground.

2. The District Court correctly concluded that Lee did not satisfy his burden of raising a genuine issue of material fact that L3Harris's reasons for terminating Lee's employment were pretextual.

Even assuming Lee had established a *prima facie* case, the District Court's decision dismissing the disability discrimination claims premised on his termination should be affirmed. On appeal, Lee does not challenge the District Court's determination that L3Harris satisfied its burden to articulate a legitimate non-

discriminatory reason. 1-ER-035 (MSJ Order at 33) ("L3Harris has met its burden in providing legitimate, nondiscriminatory reasons for terminating Lee's employment."); *see generally* OB. As it is undisputed that L3Harris satisfied its burden at the second step of the *McDonnell Douglas* framework, the burden shifted to Lee to offer evidence demonstrating L3Harris's reasons were pretextual. *Raytheon*, 540 U.S. at 49 n.3. Lee failed to do that.

An employee must demonstrate that the articulated reason for an adverse employment action is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citing *Chuang v. University of California Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000)). While an employee may rely on circumstantial evidence, "such evidence must be both specific and substantial" to create a triable issue with respect to pretext. *Id.*

In determining whether a proffered reason for an adverse employment action is "false," the focus is not whether the justifications were "objectively false." *Villiarimo*, 281 F.3d at 1062 (citing *Chuang*, 225 F.3d at 1123). Instead, "courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Id.* The plaintiff's "subjective personal judgments do not raise a genuine issue of material fact." *Schuler v. Chron. Broad.*

*Co. Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986).

Lee's challenges to the lower court's ruling miscomprehend the requirements for demonstrating pretext. For example, Lee takes issue with L3Harris's assessment that Lee was at fault for the November 2019 incident with Igne and argues that he created an issue of fact by asserting that Igne was responsible for starting the incident and allegedly swore first. OB at 24-26. But even assuming L3Harris was incorrect about who started the incident or who was most responsible, it would not prove the reasons for termination, which included that incident, were pretextual. *Villiarimo*, 281 F.3d at 1062.

Rather, Lee would need to demonstrate that L3Harris did not honestly believe that Lee's conduct was inappropriate. *Id.* Lee has not done that, nor could he. Igne's complaint and the statements that Rodney Martin gathered from witnesses (Mark Vegas, Gilbert Castro, and David Hesapene) and from Lee himself support that Lee aggressively yelled and swore at Igne, who attempted to defend himself against Lee's unnecessary attack stemming from a simple instruction to wear pants.[13] 3-ER-

---

[13] Lee's Opening Brief suggests the criticism was invalid because yelling and swearing were commonplace in his workplace. OB at 26-27. That argument illustrates Lee's continued misapprehension of the problem with his conduct. The issue was not that yelling or swearing had occurred generally, but that Lee aggressively attacked Igne in a manner that prompted Igne to complain that Lee's conduct was creating a "stressful, unsafe and hostile work environment." 3-ER-377-379 (MSJ Ex. N); *accord* 3-ER-381 (MSJ Ex. P) (explaining that Lee was "swearing the F word at Sean," and although he "couldn't hear everything that was being said clearly," he could "say that Preston was extremely loud and angry and not acting in

377-384 (MSJ Exs. N-R); 2-ER-235-236 (Martin Decl. ¶ 4).

Lee argues that Castro and Hesapene "changed their story" and that their deposition testimony refuted the statements made after the incident. *See* OB at 26-27. But in fact, both Castro and Hesapene confirmed at their depositions that they had given truthful accounts to Martin regarding the incident between Lee and Igne, and that their statements attached to L3Harris's motion were in fact that statements that they had signed, dated, and provided to Martin. 3-ER-418-421 (MSJ Ex. BB (Castro Depo.) at 16:6-19:22); 3-ER-440-441 (Ex. 2 to Castro Depo); 3-ER-449-452 (MSJ Ex. CC (Hesapene Depo.) at 26:18-28:21); 3-ER-459 (Ex. 3 to Hesapene Depo).

In response to questions from Lee's counsel, Castro and Hesapene did give conflicting statements about their perceptions of Lee and his impact on the work environment. However, Lee submitted no evidence demonstrating that those individuals provided those accounts to Martin or L3Harris management before the decision to terminate Lee was made. In other words, Lee presented no evidence establishing that L3Harris did not honestly believe at the time Lee's employment was terminated that the information provided by the witnesses about the incident

---

a civil manner"); 3-ER-382 (MSJ Ex. Q) (reporting that Lee "explode[d] in anger with Sean about something to do with having to wear pants" and that his "voice was very loud as he yelled and swore at Sean and seemed to get louder as he went on with his threatening attack").

with Igne was accurate.

Lee's Opening Brief speculates that "L3 management and its union put words into these witnesses mouths" and manufactured their statements. But Lee cites no evidence in the record supporting such speculation, nor identifies a motive that the union representing Lee and his co-workers would manufacture concerns about Lee's conduct. Such speculation does not satisfy Lee's burden of proof. *Villiarimo*, 281 F.3d at 1065 n.10 (rejecting plaintiff's argument that his speculation as to the alleged "real" reason for discharge satisfied his burden of demonstrating pretext).

Lee also proffered no evidence that would demonstrate L3Harris did not honestly believe the other information it received that factored into the termination decision, such as the information conveyed by Keaki regarding concerns raised by Lee's co-workers during interviews conducted by Scott Taylor and the concerning statements made by Lee conveyed in Dr. Bianchi's report.[14] 1-SER-00006-9 (Stewart Decl. ¶¶ 6-7, 10, 14).

Finally, Lee argues that he never had a physical altercation in the workplace and that he submitted declarations from individuals in which some stated they did

---

[14] Lee argues that he was already written up for the November 2019 incident with Igne, and thus, the incident did not support termination. *See* OB at 28. That argument ignores the other reasons articulated by L3Harris that also factored into the termination decision.

not view Lee as a threat.[15]  OB at 28.  As with his other arguments, these miss the mark as it relates to pretext.  None of these arguments establishes that L3Harris's articulated reasons for terminating Lee's employment were unworthy of credence or that a discriminatory motive more likely motivated the decision.  *Villiarimo*, 281 F.3d at 1062.

Lee failed to submit "specific" and "substantial" evidence by which a trier of fact could find that L3Harris's reasons for terminating Lee were pretextual.  Thus, the District Court correctly concluded that Lee failed to satisfy his burden of creating a genuine issue of material fact that L3Harris's reason for terminating his employment was pretextual.  1-ER-039 (MSJ Order at 37).  The dismissal of his disability discrimination claims should be affirmed.

## C. The Dismissal of Lee's Retaliation Claims Should Be Affirmed.

The District Court dismissed Lee's retaliation claims on the grounds that Lee could not meet his burden to establish a *prima facie* case of retaliation, and alternatively, that L3Harris had provided legitimate, non-retaliatory reasons for his termination, which Lee failed to show were pretextual.  1-ER-040 (MSJ Order at

---

[15] The only declaration submitted by Lee from an individual who had witnessed Lee's interaction with Igne was Hesapene's declaration, although it misspelled his last name. 2-ER-154-156.  Even if Hesapene's post-termination statements about Lee could create an issue of fact about the information L3Harris had and relied upon when it decided to terminate Lee's employment, Hesapene's declaration does not disavow anything he previously said about the incident with Igne. *Id.*

38). Lee's Opening Brief did not raise any arguments challenging the dismissal of his retaliation claims. Thus, he has waived any argument regarding those claims, and the dismissal of these claims should be affirmed.

**D.    The District Court Correctly Dismissed Lee's HWPA Claim.**

Lee contends that the District Court erred in granting summary judgment as to his HWPA claim. OB at 29-32. As the Opening Brief notes, Lee argued below that he engaged in protected activity under the HWPA by (1) reporting alleged gas theft by Igne; and (2) objecting to an instruction by Ross West that he provide his security card to West's secretary, allegedly in violation of law. *Id.* at 30; *see also* 1-ER-042 (MSJ Order at 40).

With respect to the second issue concerning the security card, the District Court rejected Lee's claim because "Lee testified at his deposition that he neither told West that giving the security card to West's secretary was illegal nor objected to West's instruction." 1-ER-042 (MSJ Order at 40). While Lee claimed below that he had objected to West in the declaration he submitted in opposition to the summary judgment motion, the District Court held that Lee could not create a question of fact by submitting a declaration contradicting his prior deposition testimony. 1-ER-042-43 (MSJ Order at 40-41). The court also concluded that Lee failed to provide any evidence that his employment was terminated because of the alleged remark to West. 1-ER-043 (MSJ Order at 41). Lee's Opening Brief does not make any arguments

regarding these conclusions. Accordingly, Lee waived any challenge to the dismissal of his HWPA claim to the extent it is premised on the alleged objection as to his security card.

The focus of Lee's argument about his HWPA claim is his allegation that Igne was stealing gas. OB at 30-32. Lee contends the dismissal of this claim should be reversed because he demonstrated causation "byway [sic] of timing" and also established pretext via the arguments he presented regarding his disability discrimination claim. *Id.* at 31-32. Lee's arguments about pretext fail for the same reasons as discussed above. Lee has identified no evidence demonstrating that L3Harris did not honestly believe the articulated reasons for terminating Lee's employment.

With respect to Lee's assertion that "timing" supports a causal connection between his alleged gas theft report and the initial termination decision in January 2020, the Opening Brief undermines that argument by contending that Lee first reported the alleged gas theft months earlier, on April 9, 2019.[16] *Id.* at 31. If that

---

[16] Lee's reference to a report in April 2019 about gas theft, is in fact erroneous. To support this assertion, Lee cites to a paragraph in his declaration that "on or about April 9, 2019, I was called by L3's Scott Taylor and I reported to Mr. Taylor about Mr. Igne stealing the gasoline." 2-ER-127 (Lee Decl. ¶ 69). However, Mr. Taylor was not assigned to investigate that allegation until December 2019. 1-SER-00006 (Stewart Decl. ¶ 6); 3-ER-389-405 (MSJ Ex. V). Additionally, in his deposition, Lee testified that he did not report the alleged gas theft prior to November 2019. 2-SER-00126 (Lee Tr. at 83:8-13) (Q: "Had you made any allegations about Sean stealing gas prior to the November 18, 2019 meeting?" A: "No.").

were the case, the initial termination decision nine months later would be too long afterward to create any inference of causation. *See, e.g.*, *Manatt v. Bank of America, NA*, 339 F.3d 792, 802 (9th Cir. 2003) (declining to find an inference of causation where "nine months lapsed between the date of Manatt's complaint and the Bank's alleged adverse decision").

Regardless of when the gas theft allegation was made, Lee proffered no evidence that he was terminated because of this allegation. In response to Lee's allegation that Igne was stealing gas, Martin investigated it and found no evidence corroborating it. 2-ER-238 (Martin Decl. ¶ 10). Similarly, after the Navy informed Keaki about the gas theft allegation, Keaki assigned Scott Taylor to investigate, and he also found no corroborating evidence. 3-ER-389-405 (MSJ Ex. V); 1-SER-00006 (Stewart Decl. ¶ 6); 2-ER-241 (Kreider Decl. ¶ 4); 2-ER-238 (Martin Decl. ¶ 11).

Lee argues that Castro confirmed the gas theft. OB at 12. That assertion is misleading. In fact, the record reflects that when Taylor questioned Castro about whether Igne was taking gas, Castro **denied** seeing Igne pump gas into a personal gas can and said he had only observed Igne pumping gas into "the red Manu Kai [company] metal gas cans." 3-ER-397-398 (MSJ Ex. V at 9-10). Castro confirmed in his deposition that he never reported to Taylor or Martin that Igne was stealing gas. 2-ER-099-103 (MSJ Opp. Ex. A (**Castro Depo.**) at 33:2-18, 35:23-39:10). Castro further confirmed that the **first time** he made statements about Igne stealing

43

gas was in **2021**, *id.* at 2-ER-103 (Castro Depo. at 39:22-25), which is well after Lee's employment was terminated. Thus, the record fails to establish that L3Harris had a reason to believe Igne stole gas.

In any event, whether or not Igne stole gas is not the question. As the District Court correctly found, Lee submitted no evidence that would demonstrate he was terminated because of the allegation about gas theft. 1-ER-042 (MSJ Order at 40). Although Lee was attempting to rely below on the timing between the theft allegation and the initial termination decision, Lee simply ignored the events that occurred thereafter, *i.e.*, the concerns reported by co-workers to Taylor and via the union about the impact Lee's conduct had on the work environment, and Keaki's request to elevate the concerns about Lee's prior conduct to the corporate level. 1-SER-00006-7 (Stewart Decl. ¶ 6-7); 3-ER-389-405 (MSJ Ex. V); 2-ER-241 (Kreider Decl. ¶ 4).

Thus, the District Court's dismissal of Lee's HWPA claim should be affirmed because Lee failed to demonstrate he was terminated because of his gas theft allegation and because L3Harris articulated legitimate reasons for his termination unrelated to this allegation, and Lee submitted no evidence that those reasons were pretextual.

DATED:   Honolulu, Hawaii, September 6, 2022.

CADES SCHUTTE LLP


/s/ *Mallory T. Martin*
AMANDA M. JONES
MALLORY T. MARTIN
Attorneys for Defendant-Appellee
L3HARRIS TECHNOLOGIES, INC.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** No. 22-15288

I am the attorney or self-represented party.

**This brief contains 10,702 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature**  /s/ *Mallory T. Martin*_____  **Date**  September 6, 2022_____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, Defendant-Appellee L3Harris Technologies Inc. is not aware of any related cases pending in this Court.

DATED: Honolulu, Hawaii, September 6, 2022.

CADES SCHUTTE LLP


/s/ *Mallory T. Martin*
AMANDA M. JONES
MALLORY T. MARTIN

Attorneys for Defendant-Appellee
L3HARRIS TECHNOLOGIES, INC.

## <u>CERTIFICATE OF SERVICE</u>

I HERBY CERTIFY that a copy of Defendant-Appellee's Redacted Answering Brief was served this day on the following by the CM/ECF system:

JOSEPH T. ROSENBAUM     jtr@frlawhi.com
ELIZABETH JUBIN FUJIWARA    ejf@frlawhi.com

Attorneys for Plaintiff-Appellant
PRESTON LEE

DATED:  Honolulu, Hawaii, September 6, 2022.

CADES SCHUTTE LLP

/s/ *Mallory T. Martin*
AMANDA M. JONES
MALLORY T. MARTIN
Attorneys for Defendant-Appellee
L3HARRIS TECHNOLOGIES, INC.