No. 22-15288

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

PRESTON LEE,

Plaintiff-Appellant

v.

L3HARRIS TECHNOLOGIES, INC.

Defendant-Appellee

---

On Appeal from the United States District Court
District of Hawaii Civil No. 1:20-00489 (LEK/KJM)
(Honorable Leslie E. Kobayashi)

---

**DEFENDANT-APPELLEE L3HARRIS TECHNOLOGIES, INC.'S
SUPPLEMENTAL EXCERPTS OF RECORD
VOLUME 1 OF 2**

---

CADES SCHUTTE LLP
AMANDA M. JONES      8854
MALLORY T. MARTIN    10211
1000 Bishop Street, 12th Floor
Honolulu, Hawaii 96813
Telephone:  (808) 521-9200
Email:  ajones@cades.com
          mmartin@cades.com

Attorneys for Defendant-Appellee
L3HARRIS TECHNOLOGIES, INC

CADES SCHUTTE
A Limited Liability Law Partnership

AMANDA M. JONES          8854-0
MICHAEL R. SOON FAH      11156-0
Cades Schutte Building
1000 Bishop Street, Suite 1200
Honolulu, HI  96813-4212
Telephone:  (808) 521-9200
Fax:  (808) 521-9210
Email:  ajones@cades.com
        msoonfah@cades.com

Attorneys for Defendant
L3HARRIS TECHNOLOGIES, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PRESTON LEE,<br><br>     Plaintiff,<br><br>  v.<br><br>L3HARRIS TECHNOLOGIES, INC.;<br>JOHN DOES 1-10; JANE DOES 1-10;<br>DOE CORPORATIONS 1-10; DOE<br>PARTNERSHIPS 1-10; DOE<br>UNINCORPORATED<br>ORGANIZATIONS 1-10; and DOE<br>GOVERNMENTAL AGENCIES 1-10,<br><br>     Defendant. | CIVIL NO. 1:20-CV-00489 LEK-KJM<br>(Other Civil Action)<br><br>**ERRATA REGARDING<br>DECLARATION OF DANIELLE<br>STEWART IN SUPPORT OF<br>DEFENDANT L3HARRIS<br>TECHNOLOGIES, INC.'S<br>SEPARATE AND CONCISE<br>STATEMENT OF MATERIAL<br>FACTS IN SUPPORT OF ITS<br>MOTION FOR SUMMARY<br>JUDGMENT, FILED SEPTEMBER<br>29, 2021 [Dkt. 50-3];**<br><br>**CERTIFICATE OF SERVICE** |

**ERRATA REGARDING DECLARATION OF DANIELLE
STEWART IN SUPPORT OF DEFENDANT L3HARRIS
TECHNOLOGIES, INC.'S SEPARATE AND CONCISE STATEMENT OF
MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT, FILED SEPTEMBER 29, 2021 [Dkt. 50-3]**

Defendant L3HARRIS TECHNOLOGIES, INC., by and through its undersigned counsel, submits this errata to address an inadvertently omitted page in the Declaration of Danielle Stewart that was attached to the Separate and Concise Statement of Material Facts in Support of its Motion for Summary Judgment, Filed September 29, 2021 [Dkt. 50-3] (the "*Stewart Declaration*").

Page 6 of the Stewart Declaration was inadvertently omitted from the filing. A complete copy of the Stewart Declaration is attached hereto.

DATED:  Honolulu, Hawai'i, October 11, 2021.

CADES SCHUTTE
A Limited Liability Law Partnership


*/s/ Amanda M. Jones*
AMANDA M. JONES
MICHAEL R. SOON FAH
Attorneys for Defendant
L3HARRIS TECHNOLOGIES, INC.

2

SER00003

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PRESTON LEE,<br><br>        Plaintiff,<br><br>      v.<br><br>L3HARRIS TECHNOLOGIES, INC.;<br>JOHN DOES 1-10; JANE DOES 1-10;<br>DOE CORPORATIONS 1-10; DOE<br>PARTNERSHIPS 1-10; DOE<br>UNINCORPORATED<br>ORGANIZATIONS 1-10; and DOE<br>GOVERNMENTAL AGENCIES 1-10,<br><br>        Defendant. | CIVIL NO. 1:20-CV-00489 LEK-KJM<br>(Other Civil Action)<br><br>**DECLARATION OF DANIELLE<br>STEWART** |

## <u>DECLARATION OF DANIELLE STEWART</u>

I, Danielle Stewart, hereby declare as follows:

1.    I worked at L3Harris Technologies, Inc. ("**L3Harris**") from July 2018 to May 2021. I started as a Human Resources Business Partner and later became Human Resources Manager. I make this declaration based on personal knowledge of the matters stated herein, unless otherwise noted.

2.    L3Harris is a civilian contractor that provided services to the United States Navy at the Pacific Missile Range Facility ("**PMRF**") at Barking Sands, Kauai until March 31, 2021 when L3Harris's contract ended and it no longer

employed any workers at PMRF. L3Harris supplied these services under a contract with its joint venture partner, Keaki Technologies, LLC ("**Keaki**"). The joint-venture was called "Manu Kai."

3.     In my role as Human Resources Business Partner, I was aware that Plaintiff Preston Lee worked at L3Harris as a painter.  I never met him in person, but in my capacity as Human Resources Business Partner, I was informed of issues that arose during his employment and was ultimately involved with the decision to terminate Mr. Lee's employment. Sean Igne was one of Mr. Lee's co-workers and the lead man for the paint shop.  Their supervisor was Rodney Martin. Mr. Lee and his co-workers in the paint shop were members of the International Brotherhood of Electrical Workers, Local Union 1260 ("**IBEW**").

4.     I was informed in around March 2019, that Mr. Lee had been sharing with coworkers that he had been diagnosed with PTSD and had been awarded a 100% disability rating from the VA. Jasmine Apo, an HR specialist for L3Harris working at PMRF who reported to me, informed me that she and Julie Broyles, an HR Manager for Keaki, spoke with Mr. Lee and asked if he needed any accommodations.  Mr. Lee reportedly said none was needed.  No action was taken against Mr. Lee relating to the reported PTSD diagnosis.

5.     In November 2019, I was informed that a complaint had been made about Mr. Lee engaging in aggressive, unprofessional conduct towards Mr. Igne, in

SER00005

violation of L3Harris policies, which was investigated by Rodney Martin. I was informed that Mr. Martin's investigation revealed that Mr. Lee had violated L3Harris policies and engaged in inappropriate conduct towards Mr. Igne warranting disciplinary action, which was issued by Mr. Martin later that month. I was informed that when the disciplinary action was issued, Mr. Lee alleged that Mr. Igne had been stealing gas from the base. I was also informed that Mr. Lee left work immediately after the meeting and later claimed that he was unable to work due to stress associated with the disciplinary action.

6.      After Mr. Lee went out on leave, Keaki program manager Ross West informed L3Harris that Mr. Lee had reported Mr. Igne's alleged gas theft to a Navy hotline and PMRF commanding officer. Mr. West informed L3Harris that he assigned a Keaki employee, Scott Taylor, to conduct an inquiry into the complaint. Mr. West subsequently shared Mr. Taylor's report with L3Harris, which included signed statements from Mr. Lee's co-workers expressing concern about working with Mr. Lee due to his conduct. Mr. West asked that these matters be elevated to a corporate level. I reviewed Mr. Taylor's report and the statements that Mr. Taylor obtained and discussed them with my manager, Amanda Arnold, and Jay Kreider, a L3Harris manager who oversaw operations at PMRF.

7.      After receiving Mr. Taylor's report, L3Harris also received from IBEW statements signed by some of Mr. Lee's co-workers expressing concern for

SER00006

their safety if Mr. Lee returned to the workplace. In reviewing the circumstances involving the incident with Mr. Igne in early November 2019, the statements obtained by Mr. Taylor and the statements presented by the union, and consulting with L3 legal counsel, I recommended to my manager, Amanda Arnold, in January 2020, that Mr. Lee's employment be terminated due to his aggressive conduct towards his co-workers, so that we could maintain a safe and healthy workplace.

8.    My recommendation to terminate Mr. Lee's employment had nothing to do with Mr. Lee reportedly having PTSD or any other medical condition or disability. At the time I made this recommendation, I was not aware of any complaints having been made by Mr. Lee of discrimination, harassment, or retaliation.

9.    I began making arrangements to notify Mr. Lee of the termination decision when he returned from leave later in January. However, right before we were to notify Mr. Lee about the termination decision, he presented a doctor's note extending his leave. L3Harris generally does not terminate employees while on leave, so we stopped the termination from being implemented at that time.

10.   While Mr. Lee was on leave, in connection with a workers' compensation claim he had filed, Mr. Lee underwent an independent psychological exam with Dr. Peter Bianchi in February 2020. I received a copy of Dr. Bianchi's report, which stated, among other things, that Mr. Lee had said he had thoughts of

SER00007

doing something stupid at work like instigating a fight or argument with others for no reason. Particularly given Mr. Lee's prior angry outburst directed at Mr. Igne and the concerns expressed by his co-workers, Mr. Lee's threatening statement to Dr. Bianchi raised concerns about returning Mr. Lee to the workplace.

11.     Mr. Lee later submitted a doctor's note stating that he could return to work on April 1, 2020. To evaluate how best to address the situation, I decided, in consultation with L3Harris legal counsel and my manager, to place Mr. Lee on paid administrative leave effective April 1, 2020, until we could make a decision on how to proceed with his employment.

12.     As part of the assessment, I asked Mr. West for Keaki's position on returning Mr. Lee back to work following his administrative leave. Mr. West relayed that Keaki's position was that it would not permit Mr. Lee to return to the employee areas of the base for which access cards were required that Keaki had taken possession of unless Mr. Lee or L3Harris could provide medical clearance guaranteeing that Mr. Lee was not a danger to himself or coworkers. L3Harris could not provide that guarantee for Mr. Lee or any other employee.

13.     Following further discussions with Mr. Kreider and Ms. Arnold, and after consulting legal counsel, I again recommended termination of Mr. Lee's employment. I was aware at this point that Mr. Lee had filed a charge of discrimination with the Equal Employment Opportunity Commission against

SER00008

L3Harris.  However, the charge played no role in the termination decision.

14.     The final decision to terminate Mr. Lee's employment was based on several factors. First, Mr. Lee's comments to Dr. Bianchi regarding instigating a fight or argument with others for no reason raised concerns about employee safety and disruption to the workplace. His statements suggested that he had not learned from the warning he received in November 2019.  Second, Keaki would not allow Mr. Lee access to the base unless L3Harris could guarantee that he would not be a danger to himself or others. Combined with the concerns described above that prompted the initial discussion to terminate Mr. Lee's employment in January 2020, I once again recommended that L3Harris terminate Plaintiff's employment, which decision was approved by Mr. Kreider and Ms. Arnold. I informed Mr. Lee of the termination decision by phone on June 22 2020, and thereafter sent him a letter confirming the decision and providing information about benefits and other matters relating to the termination of employment.

15.     I am aware that Mr. Lee has stated that he has PTSD.  I do not know if he actually has PTSD or not.  Whether he has PTSD or not was not relevant to and was not a basis for the decision to terminate his employment.

I declare under penalty of perjury that the foregoing is true and correct.

SER00009

DATED:  Ashburn, Virginia, September 24 , 2021.

_____

DANIELLE STEWART

SER00010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PRESTON LEE, | CIVIL NO. 1:20-CV-00489 LEK-KJM (Other Civil Action) |
| Plaintiff, | |
| v. | **CERTIFICATE OF SERVICE** |
| L3HARRIS TECHNOLOGIES, INC.; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE UNINCORPORATED ORGANIZATIONS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10, | |
| Defendant. | |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing

document, was duly served upon the following party via electronic mail:

FUJIWARA & ROSENBAUM, LLLC
ELIZABETH JUBIN FUJIWARA, ESQ.
JOSEPH T. ROSENBAUM, ESQ.
1100 Alakea St., 20th Floor, Suite B
Honolulu, Hawaii 96813

Attorneys for Plaintiff
PRESTON LEE

DATED:  Honolulu, Hawai'i, October 11, 2021.

CADES SCHUTTE
A Limited Liability Law Partnership


*/s/ Amanda M. Jones*
AMANDA M. JONES
MICHAEL R. SOON FAH
Attorneys for Defendant
L3HARRIS TECHNOLOGIES, INC.

2

SER00012

FUJIWARA AND ROSENBAUM, LLLC

ELIZABETH JUBIN FUJIWARA 3558
JOSEPH T. ROSENBAUM 9205
1100 Alakea St., 20ᵗʰ Fl., Ste B
Honolulu, Hawaii 96813
Telephone: 808-203-5436

Attorneys for Plaintiff
PRESTON LEE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PRESTON LEE, | ) CIVIL NO. |
| | ) (Other Civil Action) |
| Plaintiff, | ) |
| | ) COMPLAINT; DEMAND FOR JURY |
| vs. | ) TRIAL |
| | ) |
| L3HARRIS TECHNOLOGIES, INC.; | ) |
| JOHN DOES 1-10; JANE DOES 1-10; | ) |
| DOE CORPORATIONS 1-10; DOE | ) |
| PARTNERSHIPS 1-10; DOE | ) |
| UNINCORPORATED | ) |
| ORGANIZATIONS | ) |
| 1-10; and DOE GOVERNMENTAL | ) |
| AGENCIES 1-10, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## **COMPLAINT**

COMES NOW Plaintiff PRESTON LEE [hereinafter referred to as "MR.

LEE"] and complains against the above-named Defendants alleges and avers as follows:

## I. NATURE OF CASE

1.    The basis of this L3HARRIS TECHNOLOGIES, INC. is employment discrimination law violations as related to MR. LEE's employment at L3HARRIS TECHNOLOGIES, INC. [hereinafter referred to as "L3"].

## II. JURISDICTION

2.    MR. LEE brings this action pursuant, including, but not limited to, the Americans With Disabilities Act ["ADA"] and Hawaii Revised Statutes ["HRS"] Chapter 378 Part I, Discriminatory Practices, to obtain full and complete relief and to redress the tortious conduct described herein.

3.    At all times relevant herein, MR. LEE was a resident of the County of Kaua'i, State of Hawaii.

4.    At all times relevant herein, Defendant L3 is an employer within the meaning of HRS Chapter 378. L3 was and is doing business in the County of Kaua'i, State of Hawaii.

5.    At all times relevant herein, Defendant L3's is a for-profit business incorporated in the State of Delaware.

6.    Upon information and belief, and at all times relevant herein, Defendant L3's employees, agents and/or representatives, were acting within the

SER00014

course and scope of their duties as employees, agents and/or representatives of L3;

therefore, L3 is liable for the intentional and/or tortious and/or wrongful conduct of

said employees, agents and/or representatives pursuant to the doctrine of

Respondeat Superior and/or principles of Agency.

      7.     Defendants JOHN DOES 1-100, JANE DOES 1-100, DOE

CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, DOE

UNINCORPORATED ORGANIZATIONS 1-10, and DOE GOVERNMENTAL

AGENCIES 1-10 are sued herein under fictitious names because their true names,

identities and capacities are unknown to the MR. LEE, except that they are

connected in some manner with Defendants, and are/were agents, servants,

employees, employers, representatives, co-venturers, associates, or independent

contractors of Defendants herein, and were acting with the permission and consent

and within the course and scope of said agency and employment and/or were in

some manner presently unknown to the MR. LEE engaged in the activities alleged

herein and/or were in some way responsible for the injuries or damages to the MR.

LEE, which activities were a proximate cause of said injuries or damages to the

MR. LEE.  MR. LEE has made good faith and diligent efforts to identify said

Defendants, including interviewing individuals with knowledge of the claims

herein. At such time as their true names and identities become known, the MR.

LEE will amend this Complaint accordingly.

-3-

8.      All Defendants will be collectively referred to as "DEFENDANTS".

9.      All events done by DEFENDANTS described herein occurred within the County of Kaua'i, State of Hawai'i, and within the jurisdiction and venue of this Court.

### III.   STATEMENT OF FACTS

10.     MR. LEE was hired on March 20, 1994 to work on the Flight Line at the time ITT Industries was the main contractor for the United States Navy at Barking Sands.

11.     MR. LEE worked on the Flight Line as a helicopter inspector.

12.     MR. LEE never had any performance issues related to his ability to perform his job duties.

13.     In November 2006, MR. LEE became a painter.

14.     L3 took over the United States Navy contract MR. LEE worked under from ITT Industries in or about 2015.

15.     MR. LEE had the position of Painter.

16.     MR. LEE is a combat veteran and was diagnosed with Post-Traumatic Stress Disorder in February 2019.

17.     In February 2019, MR. LEE received 100% VA disability due to his PTSD.

-4-

18.   L3 became aware of MR. LEE's disability via L3 Lead Sean Igne on or about February 2019.

19.   Since being diagnosed with PTSD, MR. LEE was harassed and unfairly disciplined.

20.   L3 Lead Sean Igne told L3's human resources that he was afraid to work with MR. LEE because of MR. LEE's PTSD.

21.   Mr. Igne asked MR. LEE why he doesn't just retire.

22.   MR. LEE told Mr. Igne it was none of his business.

23.   In or about March 2019, L3 Rigging Shop Lead Mark Vegas went to their union meeting and asked how can MR. LEE be working if he had 100% disability for PTSD.

24.   Tony Pereira, L3 Lead Electrician, then stated: Wait a minute, Preston has 100% PTSD disability then he is a liability for the company. We have to inform the company because if he snaps the company will get sued. They have to let him go.

25.   Upon information and belief, Mr. Vegas helped Mr. Igne write letters to L3 to falsely portray MR. LEE in a negative light.

26.   In March 2019, MR. LEE was told by his supervisor, Rodney Martin, to go to the human resources ("HR") at 9:00 a.m.

27.   MR. LEE did as instructed and met with Julie Broyles head of

SER00017

L3 HR and Jasmine Apo an L3 HR representative.

28. At the meeting, Ms. Broyles confirmed she was aware of MR. LEE's PTSD.

29. Ms. Boynes began to ask MR. LEE a series of questions listed below related to his PTSD as Ms. Apo took notes.

30. Ms. Broyles stated because of your PTSD we have to ask you some questions.

31. Ms. Broyles stated we have to ask you these questions because we are here to help you.

32. Ms. Broyles asked, amongst other questions:

    a. Do you want to hurt your coworkers? MR. LEE Answered, "No."

    b. Do you want to hurt yourself? MR. LEE Answered, "No."

    c. Do you want to kill your coworkers? MR. LEE Answered, "No."

    d. Do you want to kill yourself? MR. LEE Answered, "No."

    e. Do you have an anger problem? MR. LEE Answered, "No."

    f. Do you want to kill people when you get angry? MR. LEE Answered, "No."

    g. Do you need anger management classes? MR. LEE Answered, "No."

SER00018

       h. Do you need a psychiatrist? MR. LEE Answered, "No."

       i. Do you have a drug problem? MR. LEE Answered, "No."

       j. Do you have an alcohol problem? MR. LEE Answered, "No."

33.    MR. LEE asked them if they were trying to fire him and Ms. Broyles and Ms. Apo said they were there to help MR. LEE.

34.    After MR. LEE was called in and interviewed by HR, he spoke with L3's Bill Nordmeier, the operator for grounds department, who also had just received 100% VA disability for his back.

35.    Due to the way MR. LEE was questioned by HR after getting his 100% disability from the federal government, Mr. Nordmeier went to L3 HR to inform them that he also got his 100% disability.

36.    Mr. Nordmeier went to L3 HR and disclosed that he had received 100% disability from the federal government and wanted to disclose it to L3.

37.    HR at L3 told Mr. Nordmeier that he doesn't need to disclose it and that he shouldn't talk about his disability at work as it was personal.

38.    On or about April 9, 2019, MR. LEE was called by L3's Scott Taylor and MR. LEE reported to Mr. Taylor about Mr. Igne stealing the gasoline.

39.    On or about November 15, 2019, MR. LEE's coworker Gilbert

-7-

SER00019

Castro was written up for not wearing protective gear.

40.    After lunch on the same date, Mr. Igne yelled at MR. LEE to put on pants which MR. LEE complied with.

41.    MR. LEE was power washing at that time and was wearing shorts because he was soaking wet.

42.    MR. LEE was wearing steel toed rubber boots.

43.    At that time, Mr. Igne was also wearing shorts and tennis shoes.

44.    Mr. Igne wore shorts and tennis shoes nearly every day at work.

45.    Based on information and belief, Mr. Igne told human resources/management via a note/letter that MR. LEE had previously been written up for not wear his pants. This was not true.

46.    Based on information and belief, Mr. Igne told human resources/management that MR. LEE yelled at or got aggressive with Mr. Igne when Mr. Igne asked MR. LEE to put his pants on. This was a lie.

47.    On the same date, MR. LEE told Mr. Igne, "Tomorrow if I have to wear long pants, you have to wear long pants. If I have to wear steel toe shoes you have to wear steel toe shoes. What is good for one is good for all. So come tomorrow morning have your PPE or else."

48.    Mr. Igne said, "Or else what, you going turn me in?"

49.    MR. LEE respond, "Yeah"

50.    Mr. Igne: "Well fuck you"

51.    MR. LEE "Well fuck you too."

52.    Mr. Igne and MR. LEE exchanged a couple more "fuck yous" and MR. LEE realized it was wrong and walked away.

53.    The following work day, MR. LEE was called into Mr. Martin's regarding a letter/note that Mr. Igne wrote to human resources/management regarding the previous day's confrontation with MR. LEE.

54.    MR. LEE was told Mr. Igne reported via the aforementioned note/letter that MR. LEE was previously written by the safety lady for not his wearing pants. This was not true.

55.    Mr. Martin asked why wasn't MR. LEE wearing his pants after he had already been written up by the safety lady previously?

56.    MR. LEE responded, "I never got written up."

57.    Mr. Martin was surprised and said, "What?"

58.    MR. LEE said, "Yeah, I never got written up. Gilbert got written up"

59.    Mr. Martin looked at the letter and told MR. LEE he better not lie.

60.    Mr. Martin again asked MR. LEE if he got written up by the safety lady previously and MR. LEE emphatically said no.

-9-

61.   MR. LEE had not been written up by the safety lady. There are multiple witnesses to this fact.

62.   During this meeting MR. LEE told Mr. Martin, "How can he tell me to put on long pants when he is wearing shorts and tennis shoes?"

63.   Wearing shorts and tennis shoes on the jobsite is a clear OSHA safety violation that Mr. Martin clearly had been aware of for years.

64.   Mr. Martin said he was going to investigate this.

65.   Mr. Lee stated, "Why am I always being investigated. Why don't you investigate Mr. Igne.

66.   To note, previously in or about October 2018, Mr. Igne lied to Mr. Martin and stated MR. LEE walked up to Mr. Igne with clenched fists acted like he was going to attack Mr. Igne and saying he was going to kick Mr. Igne's ass after work.

67.   This was proven to be a lie by the two witnesses present.

68.   MR. LEE asked Mr. Martin to write up Mr. Igne for lying regarding the October 2018 incident and Mr. Martin did nothing.

69.   On November 18, 2019, MR. LEE had a meeting with human recourses and Mr. Martin regarding the confrontation with Mr. Igne.

70.   MR. LEE was told he was written up for breaking the code of conduct for telling Mr. Igne fuck you.

-10-

71.     MR. LEE responded, "I said fuck you because he told me fuck you."

72.     MR. LEE then said: "You guys are always investigating me for this and investigating me for that."

73.     MR. LEE left he said why is he being investigated when others are not.

74.     MR. LEE said if they wanted to investigate something, you should investigate Mr. Igne for stealing gas.

75.     MR. LEE reported that every Tuesday and Thursday for years Mr. Igne would take 5 gallons of gas for personal vehicle via a gas container.

76.     This could have easily been investigated and confirmed via the amount of gas Mr. Igne was using for his company vehicle compared to the amount for gas he used.

77.     MR. LEE told them he had to immediately take stress leave and that he could not work under these conditions.

78.     MR. LEE went to see his doctor that every day to be placed on stress leave.

79.     MR. LEE's stress leave was effective November 21, 2020.

80.     On December 5, 2019, Ross West, the L3 project manager called MR. LEE and requested his CAC card and secret clearance card.

-11-

81.     MR. LEE was directed by Mr. West to give his CAC card and secret clearance card to Mr. West and if he wasn't there then give it to his secretary.

82.     MR. LEE objected and said that was not proper as the CAC card and the secret clearance card were national security related items that need to be secure at all times.

83.     MR. LEE did not think he should give such items to Mr. West.

84.     Following Mr. West's directive, MR. LEE brought the CAC card and secret clearance card on December 6, 2020 to Mr. West's office.

85.     As Mr. West was not there, Mr. LEE did as directed and left his CAC and his secret clearance card with Mr. West's secretary.

86.     This was a clear national security violation as MR. LEE should have been directed to provide the CAC card and secret clearance card to the L3 security to safeguard those security sensitive items.

87.     There were other L3 employees who were on stress leave that did not have their CAC cards and clearance cards removed by L3.

88.     On or about April 1, 2020, MR. LEE was ready to come back to work from stress leave.

89.     He was told by human recourse to stay home and he would be paid his full wages.

-12-

90.     On June 22, 2020, MR. LEE was issued his termination letter that does not indicate why he was terminated.

91.     MR. LEE was never told why exactly he was terminated.

92.     On February 27, 2020, MR. LEE timely filed his EEOC and Hawai'i Civil Rights Commission Charge of Discrimination for disability discrimination and retaliation.

93.     On or about August 19, 2020, MR. LEE received his Right to Sue letter from the EEOC.

## COUNT I
## DISABILITY DISCRIMINATION (ADA)

94.     MR. LEE incorporates paragraphs 1 through 93 as though fully set forth herein.

95.     An employer shall not discriminate against an employee based on disability under the Americans with Disabilities Act

96.     L3's conduct as described above is a violation of the ADA.

97.     The aforementioned acts and/or conduct of the L3 entitles MR. LEE to damages as provided by law. As a direct and proximate result of said unlawful employment practices MR. LEE has suffered extreme mental anguish, outrage, depression, great humiliation, severe anxiety about his future and his ability to support himself, as well as painful embarrassment among his relatives and friends, damage to his good reputation, disruption of his personal life, loss of

SER00025

enjoyment of the ordinary pleasures of everyday life and other general damages in an amount which meets the minimal jurisdictional limits of this Court.

## COUNT II
## RETALIATION

98.   MR. LEE incorporates paragraphs 1 through 97 as though fully set forth herein.

99.   The treatment of MR. LEE, as described aforesaid, evidences retaliation against MR. LEE at L3 for complaining of discrimination at the L3.

100.  It shall be unlawful discriminatory practice for an employer to retaliate against an individual under the ADA.

101.  The L3's conduct as described above is a violation of the ADA. These aforementioned acts and/or conduct of the L3 entitle MR. LEE to damages as provided by law. As a direct and proximate result of said unlawful employment practices MR. LEE has suffered extreme mental anguish, outrage, depression, great humiliation, severe anxiety about his future and his ability to support himself, as well as painful embarrassment among his relatives and friends, damage to his good reputation, disruption of his personal life, loss of enjoyment of the ordinary pleasures of everyday life and other general damages in an amount which meets the minimal jurisdictional limits of this Court.

## COUNT III
## VIOLATION OF HRS 378 PART V WHISTLEBLOWERS' PROTECTION ACT

SER00026

102.   MR. LEE incorporates paragraphs 1 through 101 as though fully set forth herein.

103.   The treatment of MR. LEE, as described aforesaid, evidences retaliation against MR. LEE at L3 for reporting illegal practices at L3.

104.   An employer shall not retaliate against an employee based on their whistleblowing under HRS, § 378-62 which states in pertinent part as follows:

> § 378-62:  An employer shall not discharge, threaten or otherwise discriminate against an employee…because:
>
> (1)   The employee… reports or is about to report to the employer…verbally or in writing, a violation or suspected violation of:
>
> (A)   A law, rule, ordinance, or regulation, adopted pursuant to the law of this State, a political subdivision of the State or the United States;

105.   L3's conduct as described above is a violation of HRS § 378-62(1)(A). These aforementioned acts and/or conduct of L3 entitle MR. LEE to damages as provided by law. As a direct and proximate result of said unlawful employment practices MR. LEE has suffered extreme mental anguish, outrage, depression, great humiliation, severe anxiety about his future and her ability to support himself, as well as painful embarrassment among his relatives and friends, damage to his good reputation, disruption of his personal life, loss of enjoyment of

-15-

the ordinary pleasures of everyday life and other general damages in an amount

which meets the minimal jurisdictional limits of this Court

## **PRAYER FOR RELIEF**

WHEREFORE, MR. LEE respectfully prays that this Court enter

judgment granting the following relief on all causes of action:

A.    That this Court enter a declaratory judgment that L3 have

violated the rights of MR. LEE;

B.    That this Court award MR. LEE special damages for the

aforementioned Counts;

C.    That this Court award MR. LEE compensatory damages,

proximately caused by L3 illegal conduct, including, but not limited to, general

damages for emotional distress in an amount to be proven at trial;

D.    As L3's treatment of MR. LEE, as aforesaid, constitutes

extreme and outrageous behavior which exceeds all bounds usually tolerated by

decent society.  In committing the above acts and omissions, L3 acted wantonly

and/or oppressively and/or with such malice as implies a spirit of mischief or

criminal indifference to civil obligations and/or there has been some willful

misconduct that demonstrates that entire want of care which would raise the

presumption of a conscious indifference to consequences, justifying an award of

punitive or exemplary damages in an amount to be proven at trial, that this Court

-16-

award MR. LEE exemplary or punitive damages in an amount to be proven at trial;

      E.      That this Court award MR. LEE reasonable attorney's fees and costs of suit herein as well as prejudgment and post-judgment interest;

      F.      That this Court order appropriate injunctive relief;

      G.      That this Court retain jurisdiction over this action until L3 has fully complied with the order of this Court and that this Court require L3 to file such reports as may be necessary to secure compliance;

      H.      That this Court award MR. LEE such other and further relief both legal and equitable as this Court deems just, necessary and proper under the circumstances.

DATED:  Honolulu, Hawaii, November 13, 2020.

/s/ Joseph T. Rosenbaum
ELIZABETH JUBIN FUJIWARA
JOSEPH T. ROSENBAUM
Attorneys for Plaintiff
PRESTON LEE

-17-

SER00029

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PRESTON LEE, | ) CIVIL NO. |
| | ) (Other Civil Action) |
| Plaintiff, | ) |
| | ) DEMAND FOR JURY TRIAL |
| vs. | ) |
| | ) |
| L3HARRIS TECHNOLOGIES, INC.; | ) |
| JOHN DOES 1-10; JANE DOES 1-10; | ) |
| DOE CORPORATIONS 1-10; DOE | ) |
| PARTNERSHIPS 1-10; DOE | ) |
| UNINCORPORATED | ) |
| ORGANIZATIONS | ) |
| 1-10; and DOE GOVERNMENTAL | ) |
| AGENCIES 1-10, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable herein.

DATED:      Honolulu, Hawaii, November 13, 2020.

/s/ Joseph T. Rosenbaum
ELIZABETH JUBIN FUJIWARA
JOSEPH T. ROSENBAUM
Attorneys for Plaintiff
PRESTON LEE

-18-

HID 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Hawaii

| | |
|---|---|
| Preston Lee | ) |
| *Plaintiff* | ) ) ) |
| v. | ) Civil Action No. 20-00489 LEK-KJM |
| L3Harris Technologies, Inc. | ) ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   L3Harris Technologies, Inc.
c/o
Corporation Service Company
1003 BISHOP STREET
SUITE 1600 PAUAHI TOWER
HONOLULU, Hawaii 96813
UNITED STATES

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:       ELIZABETH JUBIN FUJIWARA 3558
JOSEPH T. ROSENBAUM 9205
1100 Alakea St., 20th Fl., Ste B
Honolulu, Hawaii 96813

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



CLERK OF COURT

Date:   November 23, 2020            /s/ Michelle Rynne, Clerk by EA, Deputy Clerk
                                    *Signature of Clerk or Deputy Clerk*